# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| RYAN MCMURTREY,<br><br>    Plaintiff,<br><br>vs.<br><br>KYLE CLEVERINGA, in his individual and official capacity,<br><br>    Defendant. | No. C20-4048-LTS-KEM<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This case is before me on a motion (Doc. 12) for summary judgment by defendant Kyle Cleveringa and a motion (Doc. 25) for partial summary judgment by plaintiff Ryan McMurtrey.[1] Each party has filed resistances (Docs. 13, 17, 26) and replies (Docs. 16, 27). I find oral argument is not necessary. *See* Local Rule 7(c).

McMurtrey filed his complaint (Doc. 1) on September 30, 2020, asserting a claim pursuant to 42 U.S.C § 1983 based on alleged violations of his Fourth Amendment rights. Cleveringa filed his answer (Doc. 4) on October 19, 2020. A jury trial is scheduled to begin February 14, 2022.

## II.    RELEVANT FACTS

Unless otherwise noted, the following facts are undisputed for purposes of the pending motions.

---

[1] McMurtrey improperly filed a cross motion for partial summary judgment (Doc. 13) within his resistance to Cleveringa's motion for summary judgment. Because Cleveringa had filed a resistance and the issues McMurtrey sought to raise in his motion overlapped with claims already before the court, I excused McMurtrey's noncompliance. *See* Doc. 24. McMurtrey then properly filed his pending motion for partial summary judgment (Doc. 25).

A.  *Traffic Stop and Subsequent Search/Seizure*

At approximately 1:15 a.m. on October 2, 2018, Cleveringa was on duty as a Woodbury County Deputy Sheriff when he conducted a traffic stop of a vehicle that did not appear to have a front license plate, as required by Iowa law. Doc. 12-3 at 4-5. The vehicle contained a male driver, who turned out to be McMurtrey, and a female passenger, Rebecca Hemmelman. *Id*. While standing outside the passenger window, Cleveringa smelled alcohol coming from inside the vehicle. *Id*. at 5. Cleveringa asked McMurtrey to step out of the vehicle to determine whether he was under the influence of alcohol. Doc. 12-1 at 2.

Cleveringa asked McMurtrey to take a seat in his patrol car, and McMurtrey complied. Cleveringa ultimately issued McMurtrey a warning citation for improperly displaying his front license plate. *Id*. While in the patrol car, McMurtrey did not display signs of impairment and explained that his passenger had consumed alcohol earlier. Doc. 12-3 at 14. Cleveringa asked McMurtrey if there were any open containers inside the vehicle and McMurtrey said there were not. *Id*. Cleveringa then asked, "Do you mind if I do a quick search of the vehicle just to make sure there's no, uh, alcohol containers inside there?" BCV 8:58.[2] After McMurtrey consented to this "quick search," Cleveringa told a second officer, Deputy Simoni: "We're just [going to] search just to make sure . . . she's been drinking so . . . he said we could search just to make sure there's no open containers or nothing." BCV 9:13. Cleveringa asked Hemmelman to step outside the vehicle as he conducted the search. Doc. 12-3 at 14. He told her: "He said . . . you had a couple of drinks or something, so we're just making sure there's no open containers or anything like that." BCV 9:29.

While conducting the search, Cleveringa unzipped a backpack in the back seat and found syringes. *Id*. When Cleveringa asked McMurtrey and Hemmelman about the syringes, Hemmelman said she was a Type II diabetic. Doc. 12-1 at 3. Cleveringa

---

[2] Citations to the bodycam video footage (BCV) refer to the timestamp.

resumed the search and found a bag with a lock affixed to the zipper. *Id.* Cleveringa asked McMurtrey to open the bag, but he declined. *Id.* Cleveringa then reached into the passenger-side backseat pocket, where he found an alleged "tooter"[3] that, he believed, contained white residue. *Id.* Cleveringa did not perform a field test on the alleged tooter and proceeded to search various other items, including a wallet, zipped bag, purse, and makeup bag. *Id.* Ultimately, Cleveringa seized the locked bag without a warrant. *Id.*

On October 8, 2018, Cleveringa signed an application for a search warrant and, after obtaining the warrant (Doc. 12-3 at 3), located multiple small baggies of methamphetamine and marijuana in the locked bag, along with several unlabeled pill bottles with prescription pills. Doc. 12-3 at 37-38. On December 18, 2018, state prosecutors charged McMurtrey with the following based on evidence collected from the seized bag:

- Count 1: Possession with Intent to Deliver a Controlled Substance,
- Count 2: Drug Stamp Tax Violation,
- Count 3: Possession of a Controlled Substance (Second Violation) and
- Count 4: Unlawful Possession of a Prescription Drug.

Doc. 12-3 at 38.

## B.  *State Proceedings*

McMurtrey moved to suppress all evidence recovered from the search, claiming Cleveringa violated his Fourth Amendment rights by seizing the locked bag without probable cause, consent or a warrant. *See* Doc. 12-3 at 26. The state argued that Cleveringa conducted the search with McMurtrey's consent, relying on Cleveringa's allegation that he asked McMurtrey "if he would allow me to search the vehicle, to ensure that there was no open containers inside of the vehicle *or anything else that was not*

---

[3] A "tooter" is an object, in this case made out of a straw, used to ingest controlled substances.

*supposed to be inside the vehicle*. He did say that he would consent to a brief search of the vehicle." Doc. 12-3 at 6 (emphasis added).

The Iowa District Court granted the motion to suppress, taking issue with Cleveringa's testimony on grounds that it "depart[ed] markedly" from the in-camera audio and video recording of the encounter. *See* Doc. 12-3 at 38-39. The court stated:

> In contrast to Deputy Cleveringa's recollection, he did not ask McMurtrey for permission to search for "open containers or anything else that may be illegal." Rather, Cleveringa's question to search McMurtrey's vehicle was limited to the scope of searching merely for open containers.
>
> At 9:52 in the video, Deputy Cleveringa asks McMurtrey, "Hey do you mind if I do a quick search of the vehicle to make sure there's no open alcohol containers inside there." At 9:57, McMurtrey responds, "Ahh yea if you want to look really quick, I don't mind . . ." When Cleveringa and McMurtrey exit the vehicle Cleveringa tells another officer, "We are just going to search to make sure there's no open containers or nothing." Later, as Cleveringa approaches the vehicle to ask the female passenger to exit the vehicle so that he can perform his search, he advises her, "Can you just jump out real quick, and stand by this other guy . . . we are just going to make sure . . . he said you had a couple of drinks or something . . . making sure there's no open containers or anything like that . . ." There is no indication in that video that McMurtrey is asked to extend the scope of his search of the vehicle beyond a mere container search, and there is also no indication that McMurtrey volunteered to do so on his own accord.

Doc. 12-3 at 38-39. The court held that given the limited nature of McMurtrey's consent, Cleveringa had no authority to search the driver's seatback, the passenger's make-up cases, or the backpack, and thus suppressed all evidence gained from the search. Doc. 12-3 at 40. The state later dismissed all charges against McMurtrey. Doc. 12-3 at 43.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving

4

party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof,

5

then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. ANALYSIS

McMurtrey asserts his claim under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Thus, "[o]ne cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred.");

6

*Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.).

To state a claim under § 1983, a plaintiff must establish a "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385 (8th Cir. 2007). McMurtrey's claim is based on Cleveringa's alleged violation of his rights under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. This protection extends to automobiles. *South Dakota v. Opperman,* 428 U.S. 364, 367 (1976). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Marshall*, 986 F.2d 1171, 1173 (8th Cir. 1993) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). Similarly, "[t]he warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021) (internal citation and quotation marks omitted).

Cleveringa argues he is entitled to summary judgment because the facts demonstrate he did not violate McMurtrey's constitutional rights and he is entitled to qualified immunity. *See* Doc. 12. McMurtrey argues he is entitled to partial summary judgment, on the issue of liability, because the Iowa District Court conclusively determined that Cleveringa violated McMurtrey's rights. Doc. 25. The parties motions thus present three issues:

1. Does the Iowa District Court's suppression ruling prevent Cleveringa from relitigating whether he violated McMurtrey's constitutional rights?

7

2. If not, did Cleveringa violate McMurtrey's Fourth Amendment rights?

3. Is Cleveringa entitled to qualified immunity?

I will address each issue separately.

*A.    Collateral Estoppel*

McMurtrey argues he is entitled to summary judgment on the issue of liability because the Iowa District Court found that Cleveringa violated his Fourth Amendment rights by exceeding the scope of his consent during the search. Doc. 13 at 1. Cleveringa counters that the previous ruling is not binding on him, as he was not a party to the previous action or in privity with a party and thus is entitled to relitigate the issue. Doc. 16 at 1-2.

"The doctrine of collateral estoppel may be applied in a § 1983 suit to preclude relitigation of a federal constitutional issue decided in state criminal proceedings." *Duncan v. Clements*, 744 F.2d 48, 51 (8th Cir. 1984) (citing *Allen v. McCurry,* 449 U.S. 90, 101 (1980)). Because the prior ruling was issued by an Iowa state court, Iowa's collateral estoppel rules apply. *See Duncan*, 744 F.3d at 51. If Iowa law bars Cleveringa from relitigating the constitutional issue, then the federal court must give full faith and credit to the state court's determination. *See Duncan*, 744 F.2d at 51 (citing *Haring v. Prosise*, 462 U.S. 306 (1983), and 28 U.S.C. § 1738)).

Collateral estoppel, or issue preclusion, may be used offensively or defensively in successive lawsuits. *Clark v. State*, 955 N.W.2d 459, 465 (Iowa 2021). The following elements are necessary for issue preclusion to apply:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

8

*Clark*, 955 N.W.2d at 465-66 (citing *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981)). In addition, under Iowa law issue preclusion applies only with regard to prior decisions against the same party or parties in privity with one another. *Id*.

Further, the offensive use of issue preclusion has fewer public policy justifications and is therefore used more "restrictively and cautiously." *Id*. at 466 (internal quotation marks omitted). For this reason, Iowa law requires courts to consider two additional factors before a party may use issue preclusion offensively. *Id*. First, the court must ask whether the opposing party had the full and fair opportunity to litigate the issue at hand, and second, whether other circumstances would justify giving the party resisting issue preclusion the opportunity to relitigate the issue. *Id*.

Here, then, the first issue is whether Cleveringa was a party or, was in privity with a party, to the criminal action against McMurtrey in the Iowa District Court. Both parties cite *Clark* in support of their arguments. In that case, the plaintiff brought a legal malpractice action for damages against the state of Iowa – his former public defender's employer – after a court vacated his conviction based on ineffective assistance of counsel. *Clark*, 995 N.W.2d at 470. The plaintiff sought to use the previous court's finding that the public defender provided constitutionally-defective assistance to establish the breach-of-duty element of the malpractice claim. *Id*. at 462-63. The Iowa Supreme Court held that the state, while a party to both actions, was not the same party or a party in privity for purposes of collateral estoppel because the state had radically different interests in the two cases. *Id*. at 471.

Cleveringa argues that in light of *Clark*, he was not in privity with the state of Iowa in the criminal case and is entitled to relitigate the Fourth Amendment issue, as the state had radically different interests in the suppression hearing than Cleveringa has in the subsequent § 1983 case. McMurtrey argues that *Clark* addressed only the "unique situation" in which the state is a party in successive lawsuits because it prosecuted the criminal case while simultaneously providing the defense counsel whose performance was found to be deficient. McMurtrey contends that unlike the situation in *Clark*,

9

Cleveringa's interests in this case – defending the search and seizure under the Fourth Amendment – are "virtually identical" to the state's interests in the prior suppression proceeding. Doc. 27 at 2-3.

While McMurtrey is correct that this case presents a different situation, the *Clark* Court referred to this situation as "analogous:"

> In an analogous situation, findings in a criminal suppression hearing related to police officer misdeeds cannot be used preclusively in the criminal defendant's subsequent civil action against the police officer because the officer and his government employer had different interests from, and lacked privity with, the state in criminal proceedings. *See, e.g.*, *Turpin v. Cnty. of Rock*, 262 F.3d 779, 782-83 (8th Cir. 2001) ("Collateral estoppel [under Nebraska state law] cannot be used against the officers [or their county employer] in our case, as the officers were neither parties nor in privity with the State in the criminal action and did not have a full and fair opportunity to litigate the issues in the criminal action."); *Duncan v. Clements*, 744 F.2d 48, 51–52 (8th Cir. 1984) (applying Missouri law and holding police officers were not "virtually represented" by the state in a suppression hearing because the interests of the state in the criminal proceeding differed from officers' interest in subsequent civil suit despite the officers' involvement in suppression hearing).

*Clark*, 955 N.W.2d at 469. Based on *Clark*, I find that Iowa law allows Cleveringa to relitigate the constitutionality of his search, as he was not in privity with the state of Iowa during the previous criminal proceedings. McMurtrey is not entitled to summary judgment on the issue of liability based on the Iowa District Court's finding.

### B. *Did Cleveringa Violate McMurtrey's Constitutional Rights?*

Both parties argue they are entitled to summary judgment on the issue of whether Cleveringa violated McMurtrey's Fourth Amendment rights.

#### 1. *Cleveringa's Motion*

Cleveringa argues he did not violate McMurtrey's Fourth Amendment rights because: (1) McMurtrey consented to the search and, to the extent the search may have

10

exceeded his consent, it was based on a reasonable mistake of fact regarding the scope of consent, and (2) Cleveringa had probable cause to expand the search.[4] For purposes of Cleveringa's motion for summary judgment, I must view the evidence in the light most favorable to McMurtrey.

### *a. Scope of the Consent*

Both parties agree that McMurtrey consented to a search of his vehicle but they disagree about the scope of his consent. Cleveringa argues his "expanded search" for "illegal substances" was based on a reasonable mistake of fact and therefore did not violate McMurtrey's Fourth Amendment right to be free from an unreasonable search. McMurtrey argues, however, that Cleveringa seized his bag without his consent, as his consent was limited to open containers or alcohol containers and the bag had a lock on its zipper. Doc. 13 at 5-6.

An officer may search a vehicle without a warrant or probable cause if he or she obtains voluntary consent to conduct the search. *United States v. Guevara*, 731 F.3d 824, 829 (8th Cir. 2013). When a person consents to the search of a vehicle for items that can be concealed in different parts of the car, a search of those areas is objectively reasonable. *United States v. Alcantar*, 271 F.2d 731, 738 (8th Cir. 2011). In addition, searches and seizures based on a reasonable mistake of fact may be constitutional. *United States v. Gaffney*, 789 F.3d 866, 869 (8th Cir. 2015) (citing *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014)). "If it is objectively reasonable for an officer to believe that the scope of the suspect's consent permitted him to open a particular container, the Fourth Amendment is not violated." *United States v. Lopez-Vargas*, 457 F.3d 828, 829 (8th Cir. 2006).

---

[4] While Cleveringa lists consent as a reason he is entitled to summary judgment, he does not argue that the entire search was conducted pursuant to McMurtrey's consent. Therefore, I have collapsed his arguments regarding consent and his alleged reasonable mistake of fact into one.

11

To grant summary judgment for Cleveringa on this issue, I would have to find that there is no genuine issue of material fact regarding the scope of McMurtrey's consent and that it was objectively reasonable for McMurtrey to believe he could seize the locked backpack pursuant to that consent. The record does not support such findings. Indeed, when Cleveringa discovered the locked bag, he asked McMurtrey to open it and McMurtrey refused. Based on this record, reasonable jurors could easily find that it was not objectively reasonable for Cleveringa to believe that McMurtrey's consent to search included consent to seizure the locked bag. Cleveringa is not entitled to summary judgment based on McMurtrey's consent.

### b. *Probable Cause*

Cleveringa also argues he is entitled to summary judgment because he alleges he had probable cause to expand his search.[5] Doc. 12-2 at 8. He contends that the probable cause was based on the syringes found in the first backpack, which were unaccompanied by any insulin, and "small straws with a substance on them that appeared to be drug residue." Doc. 12-2 at 8-9. McMurtrey argues Cleveringa did not have consent to search either the backpack or the backseat pocket and therefore lacked probable cause to seize the locked bag. Doc. 13 at 6. I will first address McMurtrey's claim that Cleveringa's search of the backpack and the backseat pocket exceeded the scope of McMurtrey's consent.

The consent given by the suspect defines the boundaries of the search (*United States v. Shafer*, 608 F.3d 1056, 1064 (8th Cir. 2010)), and consent may be inferred from words, gestures, or other conduct. *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001). Generally, the scope of the search is "defined by its express object." *See*

---

[5] Cleveringa's briefing does not address the fact that he not only expanded his search, but also conducted a seizure of the locked bag without a warrant. I will assume he intends to apply his arguments regarding his warrantless search to his warrantless seizure.

*United States v. Ross*, 456 U.S. 798 (1982). "As with consent generally, to determine the scope, we consider what the typical reasonable person would have understood by the exchange between the officer and the suspect." *United States v. Garcia-Garcia,* 957 F.3d 887, 896 (8th Cir. 2020) (internal citations and quotation marks omitted). As noted above, when a person consents to the search of a vehicle for items that may be concealed in different parts of the car, a search of those areas is objectively reasonable. *United States v. Alcantar*, 271 F.2d 731, 738 (8th Cir. 2011) (internal quotation marks and citations omitted).

When Cleveringa asked McMurtrey for consent to search the vehicle, he stated: "Do you mind if I do a quick search of the vehicle just to make sure there's no, uh, alcohol containers inside there?" BCV 8:58. Twice more, Cleveringa stated he would limit the scope of the search to open containers or alcohol containers. *See* BV 9:13 ("We're just gonna search just to make sure . . . she's been drinking so . . . he said we could search just to make sure there's no open containers or nothing."); BCV 9:29 ("He said . . . you had a couple of drinks or something, so we're just making sure there's no open containers or anything like that."). Even viewing the record in the light most favorable to McMurtrey, I find a reasonable jury could conclude McMurtrey consented to have both the backpack and the backseat pocket searched. It is at least possible that the consented-to object of the search (alcohol containers) could have been concealed in either place, thus making a search of those places objectively reasonable. Therefore, for the purposes of analyzing Cleveringa's motion, I will consider both the syringes and the alleged tooter in my probable cause analysis.

"Although a warrantless search usually constitutes a per se Fourth Amendment violation, the automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so." *U.S. v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) (citing *Chambers v. Maroney*, 399 U.S. 42, 51-52 (1970)). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that

13

contraband or evidence of a crime would be found in a particular place." *U.S.* v. *Murillo-Salgado*, 854 F.3d 407, 418 (2017) (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)). Police officers may rely on their experiences to draw inferences, even from otherwise innocent factors, to determine whether probable cause exists. *Soderman*, 983 F.3d at 375. When the issue of probable cause is subject to more than one reasonable interpretation, the question is one of fact for the jury. *See Fleming v. Harris*, 39 F.3d 905, 907 (8th Cir. 1994) ("Although probable cause in a section 1983 action is sometimes a jury question, when the issue of probable cause arises in a damage suit and the facts are not disputed or are susceptible to only one reasonable inference, the question is one of law for the court.").

The record reflects that Cleveringa found just one straw with alleged residue, not multiple straws, and there is no evidence that the residue was, in fact, drug residue. Cleveringa did not field-test the straw, although he suggested to McMurtrey that he could do so, nor did he collect the straw as evidence. These facts undermine Cleveringa's suggestion that he believed the straw was a tooter used to ingest drugs. As for the syringes, Hemmelman explained them by stating that she was a Type II diabetic. While the apparent absence of any insulin may have cast some doubt on this explanation, Cleveringa did not follow up on this issue and, indeed, it is not entirely clear that insulin was not present elsewhere in the vehicle (such as in the first backpack). Nor is there evidence that the syringes contained any drug residue.

Viewing the evidence in the light most favorable to McMurtrey, even if Cleveringa's discovery of syringes and an alleged tooter was lawful, reasonable jurors could find that Cleveringa did not have probable cause to seize the locked bag. Cleveringa is not entitled to summary judgment on the issue of liability.

14

### 2. *McMurtrey's Motion*

McMurtrey claims there is no genuine issue of material fact that Cleveringa violated his Fourth Amendment rights. He relies heavily on his argument that the Iowa District Court's suppression ruling conclusively demonstrates that violation, but I have found Iowa law does not prevent Cleveringa from relitigating this issue. In addition, McMurtrey argues (1) the seizure of the locked bag occurred without his consent and (2) the search warrant for the locked bag was secured through false statements. In resisting McMurtrey's motion, Cleveringa relies on his arguments concerning consent, reasonable mistake of fact and probable cause. To analyze McMurtrey's motion, I must view the facts in the light most favorable to Cleveringa.

#### a. *Seizure of the Locked Bag*
#### i. *Consent and Reasonable Mistake of Fact*

Even viewing the record in the light most favorable to Cleveringa, I find that there is no genuine issue of fact as to whether McMurtrey consented to the warrantless seizure of his bag. Not only was the bag locked, but McMurtrey repeatedly declined to open it when asked to do so. No reasonable jury could find that McMurtrey consented to the search of the locked bag, or that Cleveringa made a reasonable mistake of fact by seizing it. *See Florida v. Jimeno*, 500 U.S. 248, 251-52 ("It is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk.). However, McMurtrey is not entitled to summary judgment if there is a genuine issue of material fact as to whether probable cause existed for Cleveringa to seize the locked bag.

#### ii. *Probable Cause*

McMurtrey argues there was no probable cause to support a seizure of the locked bag because neither the syringes from the first backpack nor the alleged tooter from the

15

backseat pocket was recovered from a search done within the scope of McMurtrey's consent. Doc. 13 at 6. Cleveringa argues probable cause, supported by the alleged tooter and the syringes, allowed him to seize the backpack.

For the purposes of McMurtrey's motion, I will continue to assume that Cleveringa discovered both the syringes and the alleged tooter while conducting a search that was within the scope of McMurtrey's consent. The question, then, is whether there is a genuine issue of material fact as to whether the discovery of syringes and an alleged tooter constituted probable cause when viewing the record most favorably to Cleveringa. There is. Probable cause represents only a "fair probability" that contraband or evidence of a crime will be found. *Murillo-Salgado*, 854 F.3d at 418; *Wells*, 347 F.3d at 287. Cleveringa discovered two separate items commonly used to ingest drugs. McMurtrey did not have an explanation for why the straw seemed to have white residue on it. And while Hemmelman provided an explanation (diabetes) for the presence of syringes, that explanation lacked some degree of believability given the apparent absence of insulin or other medical supplies commonly used to manage diabetes.

Just as reasonable jurors could find that probable cause did not exist, reasonable jurors could find that the alleged tooter and the syringes gave rise to a fair probability that drug-related contraband would be found in the locked bag. McMurtrey is not entitled to summary judgment on this claim.

### b. Fraudulently Secured Warrant

McMurtrey contends Cleveringa made false or reckless statements to fraudulently obtain the search warrant for the locked bag when he stated "that he asked McMurtrey if he could do a 'search of the vehicle to make sure there were no open containers in the car or anything else that shouldn't be in there.'" Doc. 25-2 at 6-7 (citing Doc. 12-3 at 12-13). Specifically, McMurtrey takes issue with the phrase "or anything else that shouldn't be in there." Doc. 25-2 at 7. Cleveringa does not directly address this argument in his briefing.

A law enforcement officer is subject to § 1983 liability when he or she submits an affidavit containing deliberate, material falsehoods or a reckless disregard for the truth in support of a warrant application. *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009); *see also Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996)). A showing of deliberate or reckless falsehood is 'not lightly met.'" *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010) (quoting *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987). "In determining if an affiant's statements were made with reckless disregard for the truth, the test is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011). "Truthful in this context means that the information put forth is 'believed or appropriately accepted by the affiant as true.'" *Lanpher*, 563 F.3d at 402 (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)). Misstatements alone will not suffice. *See United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010) ("A showing of negligence or innocent mistake is not enough to establish a *Franks* violation.").

McMurtrey has not put forth evidence suggesting that Cleveringa entertained serious doubts to the accuracy of the information reported, or that the phrase "or anything else that shouldn't be in there" had any effect on the magistrate's probable cause determination. McMurtrey has provided no evidence, other than conclusory allegations, that Cleveringa acted with the requisite intent. He is not entitled to summary judgment on this claim.

### C. *Qualified Immunity*

Cleveringa argues that he is entitled to qualified immunity because he did not violate McMurtrey's constitutional rights. Qualified immunity shields a government official from individual liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

17

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Davis v. Hall*, 375 F.3d 703, 711-12 (8th Cir. 2004). "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis*, 375 F.3d at 711-12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). To determine whether defendants are entitled to qualified immunity, courts ask (1) whether the facts alleged or shown establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity. *See Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 791 (8th Cir. 2013).[6]

I have already determined that a reasonable factfinder could find that Cleveringa violated McMurtrey's Fourth Amendment rights. Because there are genuine issues of material fact as to whether Cleveringa violated McMurtrey's constitutional rights, and Cleveringa does not argue that those rights were not clearly established, Cleveringa is not entitled to summary judgment based on qualified immunity.

---

[6] While Cleveringa has the burden to establish he is entitled to qualified immunity, his motion for summary judgment provides only the following argument:

> In the instant case, the answer to the first question, i.e. whether the facts establish a constitutional violation, is 'no.' At a minimum, Defendant had consent to search the vehicle for alcohol containers. In addition, Defendant could reasonably have believed that he had consent to search for alcohol containers or anything else/like that, things that are illegal. Finally, the initial consent search revealed the presence of syringes and straws with what appeared to be drug residue on them, giving rise to probable cause to expand the scope of the search.

Doc. 12-2 at 9-10. Cleveringa makes no attempt to argue that McMurtrey's rights were not clearly established.

## V. CONCLUSION

For the reasons set forth herein, Cleveringa's motion for summary judgment (Doc. 12) and McMurtrey's motion for partial summary judgment (Doc. 25) are both **denied**. McMurtrey's cross motion for partial summary judgment (Doc. 13) is **denied as moot**.

**IT IS SO ORDERED.**

**DATED** this 6th day of January, 2022.

_____
Leonard T. Strand, Chief Judge